No. 30,279.

P. N. RAWSON, *Appellee*, v. THE VALLEY CENTER STATE BANK, J. C. RAMSEY, *Appellant*, and E. G. ROBERTSON, *Appellee*.

(8 P. 2d 352.)

Opinion filed March 5, 1932.

*C. L. Foster,* of Sedgwick, and *P. D. Gardiner,* of Wichita, for appellant J. C. Ramsey.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris,* all of Wichita, for appellee E. G. Robertson.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover money which had been placed in a bank. The money was claimed by plaintiff Rawson, and by defendants Ramsey and Robertson. The bank was not interested in the controversy, but was merely custodian of the fund. Rawson relinquished his interest to Robertson. Judgment was entered for Robertson, and Ramsey appeals.

Ramsey owned land subject to an oil and gas lease, and negotiated with Rawson concerning sale of an interest in Ramsey's royalty for $17,000 cash. Rawson made a quick turn, and sold to Robertson for $20,000. Robertson gave Rawson a draft for $6,000, which Rawson put in the bank for a payment on the Ramsey royalty. Robertson did nothing more, and Rawson did nothing more. The bank collected the draft, and held the money for the person entitled to it.

The early enthusiasm of the negotiations and the ensuing apathy are explained in one of the briefs. Adjoining Ramsey's land was "a big oil play." It came in dry.

The evidence was that the sale was not merely a sale for cash, but for cash to be deposited in the bank. Ramsey testified as follows:

"Q. Did you understand that was to be a partial payment proposition, to pay out in installments, . . . or that it was going to be spot cash? A. I understood it was cash.

"Q. That is what you understood all the way through, was it? A. Yes.

"Q. That you were selling your royalty for cash and nothing else? A. Yes, sir.-

"Q. And that was to be $17,000? Is that correct? A. Yes, sir.

"He was to make a good heavy payment in the sum of $6,000; would bring that much that evening. He said he had the rest where he could get it, right cash.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The money was to be put in the Valley Center Bank."

Rawson testified as follows:

"Well, I met Mr. Ramsey there, and asked him about his royalty, if he wanted to sell it, and he said he did. I asked him what he wanted for it. He said he wanted $18,000 for it. I told him it was too high. I made him an offer of $17,000, and he said he would take seventeen if it was all cash.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"And I told him I would give him $17,000 cash, and that was the way the thing was agreed on.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"I placed the $6,000 in the Valley Center State Bank to assemble the $17,000."

Ramsey and Rawson stepped into the bank, and Gardner, cashier of the bank, testified to the conversation between Ramsey and Rawson, as follows:

"Mr. Ramsey said he wanted to sell his royalty for $18,000. Mr. Rawson offered $17,000. Mr. Ramsey said he would take $17,000 if Rawson could pay him right now. Rawson said he could get the money right away. Rawson said he would go to town and get it. The money was to be put up in the bank, pending examination of title."

On the basis of this testimony, the court made the following finding of fact:

"2. On January 21, 1929, the plaintiff, P. N. Rawson, met the defendant, James C. Ramsey, on the streets at Valley Center, Kan., and inquired of him whether he would sell an interest in his royalty in the before-mentioned land. Ramsey offered to take $18,000 for an undivided one-fourth interest in the royalty. Rawson countered with an offer of $17,000, and Ramsey agreed to accept Rawson's offer on the basis of all cash, upon approval of title and delivery of proper conveyance. Rawson agreed to put up in the Valley Center State Bank a substantial part of the $17,000 on that date, and Ramsey agreed that when Rawson put up the money in the bank he would deliver to the bank a royalty conveyance, to be delivered to Rawson when Rawson paid into the bank for Ramsey the full price of $17,000. This agreement between Ramsey and Rawson was oral."

Ramsey says an offer and acceptance of the offer make a binding contract. Speaking generally, this is true, but there are offers and offers, and acceptance must be in terms of the offer.

The person making an offer has the privilege of fixing his own terms. An offer may invite acceptance by a promise of the offeree. If the promise is given, a bilateral contract is formed. A bargain may, however, take the form of an offer, which is a promise, in exchange for the doing of a specified act. In such cases the offer invites formation of a unilateral contract. If the act is done, a unilateral contract is formed. When the offer is of that character, the person making the offer is not bound unless and until the thing to be done is done, and because he is not bound, the offeree is not bound. The offeree is not obliged to begin doing the act, and he may stop anywhere short of full performance of the act. If he does not begin, or if he stops short of full performance of the act, there is no contract. In cases of doubt, interpretation favors formation of a bilateral contract. The person making the offer may, however, make it perfectly plain he is not bargaining for a promise by the offeree, but for something to be done by the offeree; and if the person making the offer does make this clear, there can be no acceptance except by doing the act. These are fundamental principles of the law governing formation of contracts, and the question here is, what did Ramsey demand?

It is manifest Ramsey did not offer to take Rawson's promise to pay for the royalty. Ramsey demanded cash in the bank in the full sum of $17,000, part of it at once, and the remainder later. When the two men separated after their interview at the bank, Rawson was not bound to do anything; and if he had done nothing, Ramsey could not have maintained an action for the price. This is so because Ramsey was not bound to do anything until the full sum of $17,000 was in the bank.

Rawson commenced to do what was necessary to be done in order that he might hold Ramsey. Rawson put $6,000 in the bank. That did not fulfill the requirement that $17,000 should be put in the bank; and Rawson still could not call on Ramsey to do anything. To hold Ramsey before the full sum was placed in the bank would be to hold him to terms he did not propose, and so invent a contract when none existed.

Putting $6,000 in the bank was not a partial payment on an obligation. If Ramsey had been satisfied to accept Rawson's promise to pay $17,000 in exchange for Ramsey's promise to deed the royalty, there would have been a contract, and the money would have been a partial payment; but, as indicated, there could be no contract until all the money was in the bank, and the deposit of $6,000 was simply a fund which reduced by that sum the amount it would be necessary for Rawson to accumulate if he went ahead and completed acceptance of Ramsey's offer.

The result of the foregoing is that as a matter of law Ramsey had no claim on the fund of $6,000, and the court made a finding of fact that there was no express agreement the fund should be paid to Ramsey in the event Rawson failed to complete the purchase. Ramsey challenges this finding of fact as contrary to the evidence, but he fails to refer to any evidence in the record establishing such an agreement. The court also found Rawson did not authorize the bank to deliver the draft for $6,000, or its proceeds, to Ramsey. This finding is also challenged as contrary to the evidence, but there is no evidence in the record of such authorization.

The next day after the conversation at the bank Ramsey put in the bank a conveyance of the royalty. There were no modifying negotiations between Ramsey and Rawson after the initial transaction, and the act of placing the conveyance in the bank was merely an indication of continuance of Ramsey's offer to convey when the full price was placed in the bank.

The question whether the statute of frauds applies to transfer of a royalty interest under an oil lease is debated in the briefs, but it is not necessary to consider the question.

The judgment of the district court is affirmed.